# KROVATIN KLINGEMAN LLC
### ATTORNEYS AT LAW

GERALD KROVATIN

HENRY E. KLINGEMAN\*

HELEN A. NAU\*\*

ANNA G. COMINSKY\*\*

\*ALSO ADMITTED IN HI AND PA

\*\*ALSO ADMITTED IN NY

744 BROAD STREET
SUITE 1903
NEWARK, NEW JERSEY
07102

TEL. 973-424-9777
FAX 973-424-9779
www.krovatin.com

**DOCUMENT FILED ELECTRONICALLY**

September 22, 2011

Honorable Cathy L. Waldor
United States Magistrate Judge
United States District Court for the District of New Jersey
Martin Luther King, Jr. U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    <u>United States v. Eliyahu Weinstein</u>
               Mag. No. 10-7115 (CLW)

Dear Judge Waldor:

      The Government has asked this Court to revoke the bail of Defendant Eliyahu Weinstein who is already under house arrest with electronic monitoring and who has posted a $10,000,000 bond. The Court has scheduled a hearing for tomorrow (Friday, September 23) at 9:30 a.m. Please accept this letter in lieu of a more formal brief. The Court should deny the Government's application, as it stands on baseless allegations and false assumptions. In fact, Mr. Weinstein has been compliant with the very restrictive bail conditions imposed over a year ago and the Court should strongly consider <u>relaxing</u> the conditions to allow Mr. Weinstein to assist in trial preparation and otherwise vindicate his right to a reasonable bail as well as the presumption of innocence.

      In its September 20, 2011 letter to the Court ("Gov't Letter"), the Government argues that Mr. Weinstein's bail should be revoked because he has:

          (1)    committed new crimes while on release;

          (2)    been in contact with victim/witnesses in violation of the terms of pretrial release; and

KROVATIN KLINGEMAN LLC
ATTORNEYS AT LAW

Honorable Cathy L. Waldor
United States Magistrate Judge
September 22, 2011
Page 2 of 6

    (3)    made misstatements to his Pretrial Officer in violation of the terms of pretrial release.

As detailed below and as counsel for Mr. Weinstein will address at tomorrow's hearing, the Government's allegations are insupportable. The Government has mischaracterized both the facts as well as the consequences that flow from the true facts.

### I. The Government cannot show that Mr. Weinstein has committed *any* crimes while on release.

At pages 3-5 of its letter, the Government alleges that between February 2011 and May 2011 Mr. Weinstein defrauded "M.R.," whom the Government also claims is a "prior victim" of Mr. Weinstein's pre-arrest activities. Specifically, the Government claims that Mr. Weinstein enticed M.R. to put money into a so-called "life settlement" insurance policy investment. Further, the Government claims that Mr. Weinstein solicited M.R. to put money into a real estate deal involving a Minnesota shopping mall. The Government claims that M.R. initially provided $101,700 to Mr. Weinstein for the insurance investment and, later, an additional $33,000 for the real estate investment. The Government characterizes these allegations as constituting additional frauds or crimes committed by Mr. Weinstein after he was charged in this case.

In opposition to the Government's assertions, the Court should note the following:

    (1)    M.R. is not a "prior victim" of Mr. Weinstein. He certainly did not consider himself such at the time he interacted with Mr. Weinstein earlier this year. Indeed, if he were a "prior victim," it is inconceivable that he would give Mr. Weinstein well over $100,000 after Mr. Weinstein was arrested and charged in this case, as the Government claims.

    (2)    In dealing with M.R., Mr. Weinstein scrupulously followed the bail condition by having three different attorneys represent him in discussions, negotiations, and transactions with M.R. Moreover, the attorneys each questioned M.R. as to whether he was a "victim" (He said "no.") and whether he was represented by counsel (He was not.)

    (3)    The three attorneys representing and advising Mr. Weinstein all have relevant expertise and provided advice and direction designed to insure that Mr. Weinstein's activities complied with the bail conditions.

    (4)    The Government's M.R. allegations have not been charged and may never be charged. While the Government states that it will be seeking an Indictment shortly, notably it never says that it intends to present the M.R. allegations to the grand jury for potential charging. This raises the distinct possibility that the Government will ask the Court today to revoke Mr. Weinstein's bail, based on the M.R. allegations, but not charge Mr. Weinstein tomorrow with crimes associated with those allegations. The Court should ask the Government if it intends to charge the M.R. allegations in the forthcoming Indictment, as its answer may be telling.

**KROVATIN KLINGEMAN LLC**
ATTORNEYS AT LAW

Honorable Cathy L. Waldor
United States Magistrate Judge
September 22, 2011
Page 3 of 6

(5) One of the most compelling reasons why the Government may <u>not</u> attempt to charge Mr. Weinstein in connection with the M.R. allegations is that M.R. was <u>repaid</u> in July 2011 a total of **$162,000**, i.e., the amount he put out of pocket in his dealings earlier this year with Mr. Weinstein and others. The Government knows this and yet persists in characterizing the transactions as fraudulent.

(6) Again, M.R. was repaid in full in July 2011—almost three months ago—and only now has the Government chosen to use M.R. as the basis for its bail revocation application. These are stale and false allegations; the Government has been aware of them for months (at least), having brought them to defense counsel's attention on August 10. The Court should ask the Government why it has waited so long to air them.

In conclusion, the Government's hastily assembled and ill-considered claims concerning M.R. do not rise to the level of probable cause and, for that and the other reasons listed, the Court cannot rely upon these allegations to revoke Mr. Weinstein's bail.

## II. <u>Mr. Weinstein has only met with potential victim/witnesses in the presence of his counsel.</u>

The Government alleges that Mr. Weinstein has met with at least five victim/witnesses in violation of the conditions of his pretrial release. (Gov't Letter at 5) Notably, the Government does not identify by name or initials any of the people involved. Consequently, Mr. Weinstein cannot defend himself specifically against these vague and unproven allegations, but will do so generally below in Part III. The sole exception is a person with whom Mr. Weinstein allegedly met in New York on August 31 ("Person X"). The defense knows who Person X is. Person X is neither a victim nor a witness nor does he/she consider him/herself to be a victim or witness. Moreover, Mr. Weinstein's communications with Person X concern personal matters that have <u>nothing</u> to do with this investigation, the pending charges against Mr. Weinstein, or his defense. Further, Person X has been represented by legal counsel who has participated in direct discussions with Mr. Weinstein and his legal counsel. Further, Mr. Weinstein's legal counsel has been present for Mr. Weinstein's direct discussions with Person X, even as the legal issues between them do not involve this case.

In sum, the Government has taken otherwise innocent contact with Person X and has asked this Court to use it as the basis to revoke Mr. Weinstein's bail. Prior to making any finding against Mr. Weinstein, the Court should require the Government to produce admissible, credible, and competent evidence in support of its allegation that Mr. Weinstein's contacts with Person X amount to attempted witness tampering.

In connection with Person X, the Government raises a point that needs to be clarified: The Government argues that Mr. Weinstein improperly left the location (a law office) where he told Pretrial Services he would be meeting with counsel on August 31 to have lunch at another

**KROVATIN KLINGEMAN LLC**
ATTORNEYS AT LAW

Honorable Cathy L. Waldor
United States Magistrate Judge
September 22, 2011
Page 4 of 6

location (a kosher restaurant). (Gov't Letter at 6) This is a red herring. While Mr. Weinstein must inform Pretrial Services the location where he is meeting with counsel, Pretrial Services recognizes that Mr. Weinstein—an Orthodox Jew who keeps kosher—may leave the location temporarily to find a kosher restaurant for lunch. Moreover, Pretrial Services is able to monitor Mr. Weinstein's movements by GPS—as it did on August 31—to confirm that he went where he said he did. Applying this rule of reason in the supervision of defendants on house arrest with electronic monitoring is not only practical, humane, and respectful of religious practice, but it puts lie to the Government's insinuation that Mr. Weinstein's kosher lunch violated his bail.

Whatever occurred here, the Government has failed to prove by clear and convincing evidence that Mr. Weinstein violated the conditions of release.

### III. Mr. Weinstein has not made *any* misstatements to Pretrial Services.

While there have been no violations of bail alleged by Pretrial Services since August 2010 and no claims by Pretrial Services that Mr. Weinstein ever misled or lied to his supervising officers, the Government claims now that Mr. Weinstein has "lied" and made "misstatements" to Pretrial Services. Specifically, the Government asserts that on various occasions when Mr. Weinstein was granted permission to meet with his attorneys in New York

> rather that meet his attorneys, defendant WEINSTEIN used a number of these purported attorney visits to meet with M.R., as well as other prior victims of his fraudulent conduct, all in clear violation of his bail conditions.

(Gov't Letter at 4)

The Government itself creates a misimpression by suggesting that Mr. Weinstein was meeting with alleged victims rather than his attorneys. Actually, Mr. Weinstein in fact <u>always</u> met with his attorneys and <u>sometimes</u> Mr. Weinstein and his attorneys have met with alleged victims and witnesses. Needless to say, if Mr. Weinstein and his attorney meet with an alleged victim or witness, it is none of the Government's business, unless the witness chooses to inform the Government.

In any event, the Government has failed to prove by clear and convincing evidence that Mr. Weinstein violated the conditions of release in this regard.

**KROVATIN KLINGEMAN LLC**
ATTORNEYS AT LAW

### IV. The Court should modify the conditions of bail to allow Mr. Weinstein more freedom to prepare his defense.

The Government quotes the bail condition that Mr. Weinstein may have no "direct or indirect" contact with an alleged victim or witness (Gov't Letter at 2) without explaining that <u>all</u> parties in the case agree—the Government, Pretrial Services, and the defense—that Mr. Weinstein may have contact with alleged victims and witness <u>provided he does so in the presence of counsel</u>. This is a standard condition of bail that correctly balances the Government's interest in protecting the dignity of alleged victims and the integrity of witnesses against the Defendant's right to a fair trial. Consequently, Mr. Weinstein is entitled to meet with alleged victims and witnesses provided he does so with counsel designated for that purpose. He has done so to date and will continue to do so in the future. For clarification, however, the Order Setting Conditions of Release should be modified to add the following language on the second page between the handwritten words "indirect" and "w/anyone": "except in the presence of legal counsel." *Further*, the Government should be compelled to provide a list of persons who the Government believes fall within the "victim" and "witness" categories.

Mr. Weinstein has faithfully appeared before the Court as required and cooperated with Pretrial Services as ordered. His bail bond--$10 million—is extraordinarily high for this District. His ties to New Jersey, in particular the Orthodox community in Lakewood, are deep and strong, as his wife and six children make their home there. Mr. Weinstein has been compliant with a very restrictive bail for over thirteen months and there is every reason to believe that he will continue to comply. Consequently, we respectfully ask this Court to consider allowing Mr. Weinstein, subject to continued house arrest at night, to travel within New Jersey and New York from 8:00 a.m. to 10:00 p.m. Pretrial Services will continue to be able to monitor Mr. Weinstein's whereabouts by GPS while Mr. Weinstein will have more freedom to conduct his personal and legal business, as anyone presumed innocent should be permitted to do.

### Conclusion

A bail revocation and summary incarceration for someone who has never before been charged with a crime or even a violation of bail; who has posted a $10 million bond and submitted to house arrest; and who cannot meaningfully defend this complex, document-intensive case from the Essex County jail would be the most draconian of measures. It would render Mr. Weinstein's right to bail and right to fair trial and right to counsel all moot. Ordinarily, a bail revocation is ordered by a court after conclusive evidence of wrongdoing, e.g., a new arrest or failed drug test. The Government has presented nothing close to these examples. Instead, it has strung together a series of misleading allegations, overlaid them with critical rhetoric, and asked this Court to play along with what is essentially a strategic gambit to deny Mr. Weinstein the ability to defend himself. The Court should strongly reject the invitation. Instead, the Government should proceed with its case and let it be decided where it should be: in court, at trial.

**KROVATIN KLINGEMAN LLC**
ATTORNEYS AT LAW

Honorable Cathy L. Waldor
United States Magistrate Judge
September 22, 2011
Page 6 of 6

For the reasons set forth above and to be discussed at tomorrow's hearing, Defendant Eli Weinstein respectfully requests that the Court deny the Government's Motion to Revoke Release. Instead, the Court, after hearing from the United States Pretrial Services Agency, should modify the conditions of bail as outlined above.

Thank you for your thoughtful consideration.

Respectfully submitted,
KROVATIN KLINGEMAN LLC
/s/ Henry E. Klingeman
Krovatin Klingeman LLC
744 Broad Street, Suite 1903
Newark, NJ 07102
TEL   973-424-9777
FAX   973-424-9779
hklingeman@krovatin.com

cc: Pretrial Services Officer Rich DiGiacomo (via email)
AUSA Gurbir S. Grewal (via email)
AUSA Zach Intrater (via email)
Mr. Eliyahu Weinstein
Supervising Pretrial Services Officer Al Zotti (via email)